UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIMBERLY S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00970-MJD-JRS |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Claimant Kimberly S. requests judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").  For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this case to the Social Security Administration for proceedings consistent with this Order.

## I. Background

Claimant applied for SSI in August 2022, alleging an onset of disability as of March 1, 2020.  [Dkt. 10-2 at 11.]  Her application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Daniel Mages ("ALJ") on March 11, 2024.  *Id.* at 11, 45.  On April 17, 2024, the ALJ determined that Claimant was not disabled.  *Id.* at 11-22.  The Appeals Council denied Claimant's request for review on March 19, 2025.  *Id.* at

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

2-4.  Claimant then timely filed her Complaint on May 19, 2025, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standard

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the

next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since August 23, 2022. [Dkt. 10-2 at 13.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease in the lumbar spine; osteoarthritis in the knees; left tibial posterior tendinitis; the residual effects of left ankle surgery; left tarsal tunnel syndrome; and complex regional pain syndrome." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 15. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

to perform a range of light work (20 CFR 416.967(b)) defined as follows: sitting six hours during an eight-hour workday; standing and walking 20 minutes at one time and four hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; and no climbing ladders, ropes, or scaffolds.

*Id.* 15-16.

At step four, the ALJ found that Claimant was unable to perform any past relevant work. *Id.* at 20. At step five, the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id.* at 20-21. Accordingly, the ALJ found that Claimant was not disabled. *Id.* at 22.

### IV. Discussion

Claimant raises two issues in her Brief in Support of Judicial Review: (1) that the ALJ erred by failing to order a medical opinion; and (2) that the ALJ's finding that she was capable of perform light work is not supported by substantial evidence. [Dkt. 14 at 1.] The Court begins, and ends, with the first issue, which the Court finds dispositive.

In a typical social security case, the claimant's medical records are reviewed at the initial stage and upon reconsideration by consultant physicians who then provide expert opinions on the claimant's ability to perform work-related tasks. 20 C.F.R. § 416.913a. In this case, by contrast, Claimant did not submit her medical records in time for these reviews to take place, and the consultant physicians could not offer medical opinions. [Dkt. 10-2 at 20; Dkt. 10-3 at 3-4, 8-9.] Claimant did submit her medical records before the ALJ issued his opinion denying benefits. [Dkt. 10-2 at 20; Dkt. 10-8; Dkt. 10-9.] The ALJ could have obtained the services of a consultative examiner, who would have examined claimant and offered an expert medical opinion on her ability to perform work-related tasks, but the ALJ did not do so. 20 C.F.R. §

416.919.  Thus, the ALJ reviewed and interpreted Claimant's medical records and denied her claim for SSI without obtaining an expert medical opinion.  [Dkt. 10-2 at 20.]

Claimant argues that the ALJ erred by failing to obtain the services of a consultative examiner.  [Dkt. 14 at 4-8.]  She points to case law holding that an ALJ may not "play doctor" or attempt to interpret highly technical medical records, test results, or images without the assistance of a medical expert.  *Id.* at 7.  The Commissioner argues that Claimant waived the issue by not requesting a consultative examination during the administrative proceedings, that the ALJ had discretion in deciding whether the obtain the services of a consultative examination, that the RFC determination is made by the ALJ and not a medical expert, and that Claimant has not pointed to evidence that warrants additional limitations.  [Dkt. 19 at 6-9.]

"A consultative examination is a physical or mental examination or test purchased for [claimant] at [SSA's] request and expense from a treating source or another medical source[.]"  20 C.F.R. § 416.919.  "The decision to purchase a consultative examination will be made on an individual case basis[.]"  *Id.*  SSA "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [a] claim."  20 C.F.R. § 416.919a(b).  One example of a situation meriting a consultative examination is when "[t]here is an indication of a change in [claimant's] condition that is likely to affect [claimant's] ability to work[.]"  20 C.F.R. § 416.919a(b)(4).

The Seventh Circuit Court of Appeals has repeatedly reversed the Commissioner's denial of benefits when an ALJ interpreted new medical evidence that was not previously presented to a medical expert.  *See*, *e.g.*, *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (holding "the ALJ was not qualified to assess on his own how the April 2014 MRI results related to other evidence in the record" and that "was not supported by substantial evidence because he failed to

5

obtain a medical expert to review the April 2014 MRI"); *see also Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) ("without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment") This line of decisions arises from the well-established rule that an ALJ "must not succumb to the temptation to play doctor" or reach conclusions outside their lay expertise. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

In addition to other tests, procedures, lists of medications, and exam notes, the medical evidence in this case includes an MRI of claimant's spine that showed "multilevel degenerative changes of the lumbar spine, most notable at L5-S1 with central subarticular disc protrusion abutting bilateral S1 nerve root."  [Dkt. 10-2 at 16-17] (quoting [Dkt. 10-9 at 325-26]).  It also includes an MRI of her left knee that showed "severe tricompartmental osteoarthritis with full-thickness cartilage defects, medical tibial plateau focal subchondral marrow edema that may be secondary to full-thickness cartilage defect in this region and/or nondisplaced impaction/insufficiency fracture give focal T1 signal decrease, horizontal undersurface tear of the poster of horn and root of the medial meniscus with extrusion, mild insertional tendinosis of the quadriceps tendon, and quadriceps fat pad edema which could be seen in impingement syndromes."  [Dkt. 10-2 at 17] (citing [Dkt. 10-9 at 328-29]).  And it includes "knee x-rays that showed evidence of bilateral degenerative joint disease and evidence of Pellegrini-Stieda lesion which was indicative of chronic prior medial collateral ligament (MCL) injury."  [Dkt. 10-2 at 17] (quoting [Dkt. 10-8 at 343]).  The ALJ reviewed this objective medical evidence, along with the rest of Claimant's medical records, and found that "[C]laimant's allegations regarding the severity and limiting effects of [her] impairments are not fully supported by the objective record."  [Dkt. 10-2 at 18.]

As is clear from the extremely technical medical language quoted above, the ALJ was completely unqualified to assess the objective medical evidence in this case without the assistance of a medical expert.

The Court is unpersuaded by the Commissioner's attempt to shift blame to Claimant for her delay in facilitating the retrieval her medical records to SSA, and for failing to raise this argument in a brief below.  The Commissioner's argument ignores that fact that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)); *see also Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) ("[T]he procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled.") (citing 20 CFR § 416.927(a)(3)).  Indeed, "[a]n ALJ is under an obligation to develop a 'full and fair record.'" *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)).  Moreover, a claimant's burden "is to produce evidence, not necessarily opinions." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021); *see Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011)  ("If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations.").

The ALJ had received Claimant's medical records before he issued his opinion, and it was within his authority to obtain a medical expert to review these medical records, examine Claimant, and provide an expert medical opinion about her work-related limitations.  20 C.F.R. § 416.919.  His decision to move forward with the denial of benefits without first obtaining an expert medical opinion is a glaring error that should have been obvious to him at that time.

Accordingly, the Commissioner's Decision is **REVERSED** and **REMANDED for proceedings**

**consistent with his Order**.

### IV. Conclusion

For the reasons set forth above, the Commissioner's denial of social security benefits is

**REVERSED and REMANDED to the Social Security Administration for proceedings**

**consistent with this Order**.

SO ORDERED.

Dated:  15 MAY 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email